G. D. RIGSBY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5599.   Promulgated February 18, 1927.

1. A corporation in which the taxpayer was a stockholder was dissolved and the assets transferred to a partnership composed of the former stockholders. *Held*, that the taxpayer realized taxable gain to the extent the value of the property received in liquidation exceeded the cost of the stock.

2. Income to which the corporation was entitled but which it never received, it being appropriated by the stockholders, may not be included in the assets of the corporation at the time of its dissolution.

3. Under the community property laws of Texas the wife has a vested interest in community property and under section 1212

of the Revenue Act of 1926 such income was properly returned for 1920 when divided between husband and wife.

*Harry C. Weeks, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income tax for the calendar years 1919 and 1920 in the respective amounts of $3,262.34 and $44.44, a total of $3,306.78. The petition alleges that the Commissioner, in determining the deficiency for 1919, erred in including in income a liquidating dividend, and in the computation of the amount of the dividend if any part of it should be included in income. The error alleged for 1920 is the failure of the Commissioner to credit the overassessment which would result from the disallowance of the deficiency determined for 1919.

The Commissioner, in an amended answer filed at the hearing, asserts that the taxpayer is not entitled to report income for 1920 on a community property basis.

FINDINGS OF FACT.

The taxpayer is an individual residing at Wichita Falls, Tex.

In 1918 he was a stockholder in the Hunt-Rigsby Co., a Texas corporation, engaged in the cotton and grain business at Burkburnett, Tex. The corporation had capital stock of $6,000, divided into 60 shares, of which the taxpayer owned 29, his brother, F. E. Rigsby, owned one share, and J. C. Hunt owned the remaining 30 shares.

The corporation owned approximately two city blocks in Burkburnett on which it gave oil and gas leases. A producing well was brought in on these properties about September, 1918, and for a short time thereafter the royalties received under the lease were paid to the Hunt-Rigsby Co. At that time the corporation had in its employ a manager and bookkeeper, who, under his employment agreement, was to receive 10 per cent of the profits of the corporation. When the corporation began to receive oil royalties in 1918 this employee demanded a share of them as profits of the corporation. The taxpayer and Hunt, the president of the corporation, thereupon arranged to have the oil royalties run directly to them in equal proportions, instead of to the corporation. No formal corporate action was taken to effect this change in the payment of royalties.

On January 11, 1919, the stockholders of the Hunt-Rigsby Co. agreed to dissolve the corporation and a certificate evidencing the dissolution agreement was filed with the Secretary of State of the State of Texas on February 14, 1919. Upon the dissolution of the corporation its assets were taken over by a partnership composed

of Hunt and the taxpayer who, as partners, conducted the business during the remainder of 1919.

Between the time of the discovery of the well on the property of the corporation and the dissolution of the corporation, royalties were received by Hunt and the taxpayer, individually, in the amount of $30,179.04. This amount was not shown on the books of the corporation and was not listed among its assets at the time of dissolution. The Commissioner, as the result of a revenue agent's report, added the amount of $30,179.04 to the corporate assets and thereby increased the liquidating dividends of the stockholders.

At or about the time the corporation was dissolved the taxpayer purchased his brother's one share of stock for $2,700. After the dissolution of the corporation the manager and bookkeeper, who was pressing a claim for a share of the royalties, was paid $1,000 to drop his claim.

At the close of the year 1919 the taxpayer was single and reported his income as his own. On the last day of the year 1920 he was married and living with his wife, and for that year he and his wife each filed a return dividing equally the income from community property.

OPINION.

ARUNDELL: The first proposition of the taxpayer is that, as his ownership in the partnership was in the same proportion as his ownership of stock had been in the corporation, the transaction whereby the partnership took over the corporate assets did not result in taxable gain. This question has been before the Board in several cases and we have consistently held that in such cases the stockholder realized taxable gain to the extent that the value of the property received in liquidation exceeded the cost of the stock. *Appeal of Huffman*, 1 B. T. A. 52; *Appeal of Estate of Buchmiller*, 1 B. T. A. 380; *Appeal of Shapiro*, 2 B. T. A. 620.

The taxpayer further says that where the property transferred has no market value the transaction does not result in taxable income. No evidence on this point was offered and we must sustain the finding of the Commissioner with respect thereto.

The principal question involved in this appeal is whether the oil royalties, amounting to $30,179.04, should be included in the assets of the Hunt-Rigsby Co., a corporation, at the time of its dissolution, thus increasing the amount distributable to stockholders upon liquidation. The Commissioner added this amount to the assets of the corporation as " oil income receivable." The taxpayer contends that, being drawn by the stockholders ratably and with the knowledge and consent of all the stockholders and without intent to reimburse the

corporation, the royalties constituted dividends and can not be treated as accounts receivable of the corporation.

The legal ownership and the right of disposition of the royalties was in the Hunt-Rigsby corporation. It could receive the royalties and distribute the amount thereof as dividends; or it could authorize the lessee of the property to pay the royalties directly to the stockholders; in either event there is the same result, income is received and a distribution of dividends is made. It adopted, in effect, the latter course. This method of distribution was arranged by the two men who owned all the stock except for one qualifying share held by a person who took no part in the conduct of the business. It was the custom of Hunt and Rigsby to conduct most of the corporate business in this informal manner. Official action determined upon by directors of a corporation will not be defeated merely by the absence of a formality such as the failure to record in the corporate minute book the action decided upon.

The situation in this case with respect to the action of the corporation in waiving its right to actual receipt of the royalties and directing their payment directly to its stockholders, is in all material respects on all fours with the situation in *Rensselaer & S. R. Co.* v. *Irwin*, 249 Fed. 726; 1 Am. Fed. Tax Rep. 945. It was there held that dividends paid by the lessee to the lessor's stockholders as rent for the lessor's property must be treated as income to the lessor. A number of cases on this question are collated in *Appeal of American Telegraph & Cable Co.*, 2 B. T. A. 991.

It necessarily follows then, that if the royalties to which the corporation was entitled were income to it and such income was distributed pro rata to the stockholders, the amount of the royalties no longer constituted assets of the corporation and did not exist as assets for distribution upon liquidation of the corporation in 1919. This seems to us to be the case here, and in our opinion the Commissioner erred in adding to the income of the taxpayer as a liquidating dividend any part of the oil royalties which prior to the dissolution of the corporation had been distributed to the stockholders.

We have heretofore held in *Appeal of R. W. Ramming*, 6 B. T. A. 188, that under the laws of Texas the wife has a vested interest in community property and that, under section 1212 of the Revenue Act of 1926, such income for any period prior to January 1, 1925, was properly returned if divided between husband and wife. In support of his affirmative defense, the Commissioner has made no showing that such was not the case here. The decision in the *Ramming* appeal is controlling in the present appeal.

*Judgment will be entered on 15 days' notice, under Rule 50.*